**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PAUL RATHBLOTT,** | | **CIVIL ACTION** |
| **Plaintiff,** | | |
| **v.** | | |
| **PEOPLESTRATEGY, INC.,** | | **NO.  15-4293** |
| **Defendant.** | | |

DuBois, J.                                                        March 4, 2016

**M E M O R A N D U M**

## I.    INTRODUCTION

Plaintiff Paul Rathblott claims that he is owed thousands of dollars in interest payments because defendant, PeopleStrategy, Inc. (hereinafter "PeopleStrategy"), made a payment under a settlement agreement (the "Settlement Agreement") one day late. The Settlement Agreement requires that PeopleStrategy pay Rathblott a sum in periodic installments, which must be made "available" to Rathblott on the first business day of each calendar month. PeopleStrategy made a payment on April 1, 2015, but the bank transfer did not clear until the next day. Rathblott argues that the payment was late, which automatically imposes a higher interest rate on the unpaid balance. PeopleStrategy concedes that the payment was late, but argues that the parties bargained for a ten-day "Cure Period" to avoid precisely this sort of litigation.

Presently before the Court is PeopleStrategy's Motion to Dismiss Amended Complaint. For the reasons that follow, the Court grants the Motion and dismisses Rathblott's Amended Complaint with prejudice.

II.     BACKGROUND

A. FACTUAL HISTORY

On a motion to dismiss, the Court accepts the facts alleged in plaintiff's Amended Complaint as true. The parties agree as to the relevant facts, and signed a stipulation to that effect. Pl.'s Resp. Ex. A.

1.   The Initial Dispute

On December 31, 2012, plaintiff Paul Rathblott and Peter Clarke[1] agreed to sell their interests in a company, ERC Dataplus, Inc., to defendant PeopleStrategy. To that end the parties signed a Purchase Agreement. The parties also executed a promissory note (hereinafter the "Promissory Note"), pursuant to which PeopleStrategy agreed to pay Rathblott the money due to him under the Purchase Agreement.

A dispute arose as to the terms of the Purchase Agreement, the details of which are not relevant to this case. On September 24, 2013, PeopleStrategy filed a declaratory judgment action against Rathblott and Clarke, captioned *PeopleStrategy, Inc. v. Paul Rathblott and Peter Clarke*, No. 13-cv-5593 (E.D. Pa. 2013). The parties settled that litigation at a settlement conference held before United States Magistrate Judge Thomas J. Rueter on July 7, 2014. That settlement was memorialized by the Settlement Agreement executed on July 11, 2014.

2.   The Settlement Agreement

The Settlement Agreement provides that PeopleStrategy pay Rathblott $900,000 in 72 monthly payments of $12,500, commencing August 1, 2014, plus interest each month at the rate of 1% per annum on the unpaid balance. Each payment is due on the first business day of the month, and a payment "shall be deemed paid only when available to Rathblott . . . in good,

---

[1] Clarke is not a party in this case.

readily available funds" in Rathblott's bank account at TD Bank, N.A. The agreement also provides that "the annual interest rate shall increase to 6% per annum . . . as of the first payment default and shall thereafter apply to the unpaid balances until paid in full."

In addition, the total amount owing to Rathblott becomes immediately payable, or accelerated, upon a number of triggering events, including when PeopleStrategy "fails to make any payment of principal or interest when due (a 'payment default') and fails to cure such failure within ten days of the receipt of Notice thereof ('Cure Period')." The parties dispute whether the Cure Period averts acceleration only, or also averts the application of 6% default interest.

Finally, the Settlement Agreement states that the Promissory Note "would be deemed amended and modified to reflect the indebtedness amounts, interest rates and payment terms set forth in this Agreement . . ." "[I]n the event of a default" by PeopleStrategy, Rathblott "may proceed under this Agreement or the Promissory Notes, or both, as [Rathblott] determines."

### 3.  The Late Payment

The dispute in this case arises out of a payment due April 1, 2015. On that date, PeopleStrategy made a payment. However, the funds were not transferred by the bank into Rathblott's account until the next day, April 2, 2015, and were thus not "available" to Rathblott on the date the payment was due. According to Rathblott, the late payment automatically triggers the 6% default-interest rate for all payments due after April 2015. PeopleStrategy disagreed, and continued to make payments to Rathblott calculated at the 1% interest rate.

### B.  PROCEDURAL HISTORY

PeopleStrategy filed an action against Paul Rathblott for declaratory judgment on August 4, 2015 in Civil Action Number 15-4293. On August 11, 2015, Rathblott filed an action against

PeopleStrategy in Civil Action Number 15-4463. On September 4, 2015, PeopleStrategy moved to consolidate the two actions. The Court granted the motion by Order dated September 9, 2015.

PeopleStrategy filed a Motion to Dismiss that action on October 16, 2015. Rathblott amended his Complaint on October 30, 2015. As a result the Court denied the Motion as moot by Order dated November 2, 2015.

A preliminary pretrial telephone conference was held on November 5, 2015. At the conference PeopleStrategy agreed to withdraw its declaratory judgment action without prejudice, as set forth in the Scheduling Order dated November 9, 2015.

Presently before the Court is PeopleStrategy's second Motion to Dismiss, filed November 20, 2015. For the following reasons, the Court grants PeopleStrategy's Motion.

## III.   LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

To state a breach of contract claim under Pennsylvania law, plaintiff must allege: "(1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract and (3) resultant damages." *Jacoby v. AXA Equitable Life Ins. Co.*, No. 13-cv-6511, 2014 WL 7058224, at *3 (E.D. Pa. Dec. 15, 2014) (quoting *Omicron Systems, Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004)).

4

Ruling on the instant Motion to Dismiss "requires the [C]ourt to make a preliminary inquiry as to whether the contract before it is ambiguous." *Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 111 (3d Cir. 1994) (citing *Stendardo v. Federal Nat'l Mortgage Ass'n*, 991 F.2d 1089, 1094 (3d Cir. 1993)).[2] "Where the written terms of the contract are not ambiguous and can only be read one way, the court will interpret the contract as a matter of law. If the contract is determined to be ambiguous, then the interpretation of the contract is left to the factfinder, to resolve the ambiguity in light of extrinsic evidence." *Id.* (internal citations omitted).

Whether a contract contains an ambiguity is a question of law to be decided by the Court. *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009). The test for ambiguity is whether "the words of the contract are capable of more than one objectively reasonable interpretation . . . ." *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 76 (3d Cir. 2011). "The Court should consider the specific language of the contract, any meanings suggested by counsel, and extrinsic evidence offered in support of each interpretation." *Jacoby*, 2014 WL 7058224, at *3. Courts should read contracts "to avoid ambiguities if possible." *Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 505 (E.D. Pa. 2014) (quoting *Nationwide Mut. Ins. Co. v. Chiao*, 186 Fed. App'x. 181, 185 (3d Cir. 2006)).

---

[2] In his response, Rathblott asserts that the Motion to Dismiss must be denied because the Amended Complaint alleges facts that, when accepted as true, adequately plead each element of a breach of contract claim. Pl.'s Resp. at 10. According to Rathblott, "the inquiry should end here." *Id.* However, Rathblott's assertion that the Settlement Agreement provides for automatic default interest is a conclusion of law not entitled to deference. Furthermore, "the interpretation of an unambiguous contract is a matter of law for the court, and there is no reason why a court cannot decide such an issue in a motion to dismiss." *Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*, No. 05-cv-140, 2005 WL 839404, at *2 (E.D. Pa. Apr. 12, 2005) *rev'd on other grounds*, 170 F. App'x 805 (3d Cir. 2006).

IV.     DISCUSSION

### A.  COUNT I: THE SETTLEMENT AGREEMENT

The Settlement Agreement sets forth two consequences if PeopleStrategy is dilatory in its payments: (1) the unpaid balance owed to Rathblott begins accumulating interest at an annual rate of 6% rather than 1% (default interest), and (2) the remaining balance is accelerated and becomes immediately due and payable to Rathblott. The parties agree that PeopleStrategy can avoid acceleration by curing a late payment within ten days of receiving proper notice from Rathblott (the "Cure Period"). The question in this case is whether PeopleStrategy's right to cure also protects it from default interest.

Pursuant to Section 3(c) of the Settlement Agreement, the 6% annual rate applies upon "the first payment default . . . ." Rathblott argues that PeopleStrategy defaulted because its payment was late, and that ends the inquiry; even though PeopleStrategy cured, it is still in default and must still pay default interest. PeopleStrategy responds that it should not be deemed to be in default because it exercised its right to cure. For the following reasons, the Court concludes that the unambiguous language of the Settlement Agreement supports PeopleStrategy's interpretation.

### 1.  Definition of Cure Period

The purpose of a cure period is to eliminate a default and its attendant consequences, thereby restoring the parties to their pre-default positions. Rathblott, however, argues that the parties bargained for a cure period that does no such thing: PeopleStrategy would remain in default, despite exercising its right to cure. The Court rejects this argument based on the plain text of the Settlement Agreement.

It is a fundamental principle of contract interpretation that, where a contract uses a legal term of art, such as "cure," the Court should interpret that term "in accord with [its] specialized or accepted usage" unless doing so would render the contract documents irrational or inconsistent. *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1013 (3d Cir. 1980); *see also Edelman v. Yeakel*, 27 Pa. 26, 26 (1856).

It is well established that "cure period" denotes a time frame in which a party "has gone into technical default on a contractual payment" but "is permitted to submit payment without further prejudice, and *without being considered to have defaulted*." Black's Law Dictionary Free Online Legal Dictionary (2d ed.), http://thelawdictionary.org/cure-period (last visited March 4, 2016, 2014) (emphasis added). This is the same definition that is recognized elsewhere in Pennsylvania law. *See* 41 Pa. Stat. Ann. § 404(c) ("Cure of a default pursuant to this section restores the residential mortgage debtor to the same position as if the default had not occurred."). Courts that have interpreted the meaning of "cure" in other contexts have consistently found that "[c]uring a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified." *In re Taddeo*, 685 F.2d 24, 26–27 (2d Cir. 1982). By curing, a party "is entitled to avoid all consequences of the default—including higher post-default interest rates." *In re Entz-White Lumber & Supply, Inc.*, 850 F.2d 1338, 1342 (9th Cir. 1988); *see also In re Se. Co.*, 868 F.2d 335, 338 (9th Cir. 1989) ("The consequences of default for purposes of cure are not limited to acceleration.").

In this case, the right to cure is set forth in Sections 5(a)–(b) of the Settlement Agreement. The contract defines "Cure Period" only to the extent that it establishes that a late payment may be cured within ten days of receiving proper notice from Rathblott; the contract is silent as to the interaction between the Cure Period and PeopleStrategy's default status.

However, this silence does not create ambiguity. To the contrary, it demonstrates that the parties intended to incorporate into the Settlement Agreement the standard usage of that term. *See, e.g.*, *Borish v. Britamco Underwriters, Inc.*, 869 F. Supp. 316, 319 (E.D. Pa. 1994) ("Although the terms 'claim' and 'notice' are not defined in the [contract], we do not find that that fact creates inherent ambiguity in their meaning or makes the [contract] ambiguous. Courts give undefined contract terms their common meaning.").

Rathblott is unable to point to any provision of the Settlement Agreement that expresses an intent to revise what the term "cure" ordinarily means. Rathblott has only one argument: the Cure Period is initially set forth in Section 5(a) of the contract, which is first on a list of "events" that trigger acceleration, whereas the default-interest provision is set forth in a separate section, 3(c). However, it is a fundamental principle of contract interpretation that a document must be interpreted as a whole. *See, e.g.*, *Bethlehem Steel Corp. v. MATX, Inc.*, 703 A.2d 39, 42 (Pa. Super. Ct. 1997) ("When determining whether a contract is ambiguous, a court must view the contract as a whole and not in discrete units."); *see also* Restatement (Second) of Contracts § 202(2) (1981). In addressing the question of PeopleStrategy's default status, the Court must consider other contract provisions that cover payment default and its consequences—including Section 3(c).[3]

Accordingly, Rathblott's argument that the "first payment default" has occurred notwithstanding PeopleStrategy's cure is unavailing. Under any reasonable reading of the

---

[3] In addition, Section 5 is clearly not limited to the subject of acceleration. Section 5(a) defines "payment default," as that term applies elsewhere in the contract; Section 5(b) addresses the application of default interest, as discussed in part IV.A.2, *infra*; and Section 5(d) allows Rathblott to proceed under the Promissory Note in the event of a default, which, as Rathblott himself argues in Count II, includes remedies that go beyond acceleration.

contract, the Cure Period eliminates PeopleStrategy's default, and thereby protects it from the application of 6% default interest.

### 2.  Section 5(b)

The parties' unambiguous intent to adopt the standard definition of "cure" is further supported by the plain language of Section 5(b) of the Settlement Agreement. Rathblott's interpretation contradicts that provision.

In order to prevent PeopleStrategy from abusing the Cure Period, the parties included in the Settlement Agreement Section 5(b). That section provides, in relevant part, as follows:

> b.  If Plaintiff utilizes the Cure Period more than three (3) times in twelve (12) consecutive months, per party, this will be deemed a material breach and payment of any unpaid balance will immediately come due plus interest at 6% per annum until paid in full. . . .

The clear purpose of Section 5(b) is to impose certain consequences if PeopleStrategy engages in excessive use of the Cure Period. The provision specifically identifies 6% interest as such a consequence. Section 5(b), therefore, only makes sense if the Cure Period protects PeopleStrategy from 6% interest until PeopleStrategy uses the Cure Period more than three times in one year.

Put differently, Rathblott's interpretation renders Section 5(b) superfluous. If Rathblott is correct that 6% interest applies after PeopleStrategy cures just *once*, it would have been unnecessary to include reference to 6% interest as a consequence of using the Cure Period more than *three* times in one year. The Court "takes care not to render other portions of a provision' or contract superfluous when construing contract language." *New Castle Cty., Del. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 174 F.3d 338, 349 (3d Cir. 1999). "[N]o provision of a contract should be treated as surplusage or redundant if any reasonable meaning consistent with other parts of the agreement can be given to it." *CAMICO Mut. Ins. Co. v. Heffler, Radetich & Saitta,*

*L.L.P.*, 587 F. App'x 726, 730 (3d Cir. 2014) (quoting *Wyo. Valley W. Sch. Dist. v. Nw. Sch. Dist.,* 695 A.2d 949, 953 (Pa. Commw. Ct. 1997)); *see also* Restatement (Second) of Contracts § 203(a) (1981) ("[A]n interpretation which gives a reasonable, lawful and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect").

Rathblott's many filings do not address this argument. Instead, Rathblott insists that PeopleStrategy's interpretation would contradict the clear language of Section 3(c), which provides that default interest "shall" apply "as of the date of the first payment default." However, as discussed above, whether PeopleStrategy is deemed to be in payment default depends not only on the definition of default, but also on whether exercise of the Cure Period eliminates that default status. PeopleStrategy's interpretation does not read Section 3(c) out of the contract; that Section is the only part of the contract that imposes default interest if PeopleStrategy fails to cure.

Applying these fundamental principles of contract interpretation dictates a single result: the Cure Period unambiguously covers all consequences of default—including both acceleration and default interest. [4] Accordingly, the Court concludes that the Settlement Agreement is unambiguous as a matter of law, and the contract's plain meaning precludes plaintiff's claim. Thus, as to Count I of plaintiff's Amended Complaint for damages pursuant to the default-

---

[4] Count I of Rathblott's Amended Complaint also alleges that, following the April 2015 "default," every subsequent payment has been inadequate because PeopleStrategy continued to make payments based on the 1% interest rate. Rathblott alleges that, because these subsequent payments were inadequate and not cured, Rathblott is entitled to the full amount due under the acceleration provision. However, because the Court concludes that PeopleStrategy was not required to pay at the 6% interest rate, the payments made after April 2015 do not put PeopleStrategy into uncured default.

interest provision of the Settlement Agreement, plaintiff has failed to state a claim upon which

relief can be granted.[5]

## B.  COUNT II: PROMISSORY NOTE

In Count II of the Amended Complaint, Rathblott claims that he is entitled to attorneys'

fees, an additional 5% in interest (11% interest total), and acceleration pursuant to the

Promissory Note. The Court rejects this argument.

Section 5(d) of the Settlement Agreement states that "[i]n the event of a default by

[PeopleStrategy], [Rathblott] may proceed under this Agreement or the Promissory Notes, or

both, as [Rathblott] determines." Rathblott's Amended Complaint states that he "has determined

to proceed under both" the Settlement Agreement and the Promissory Note.

The Promissory Note includes a thirty-day cure provision that is distinct from the Cure

Period set forth in the Settlement Agreement. Rathblott concedes that PeopleStrategy's April

2015 payment would be considered cured under the Promissory Note, and as of that time, "there

had not yet been an actionable default under the Promissory Note." Pl.'s Surreply at 10.

However, Rathblott argues that he is entitled to receive payments calculated at the 6% interest

rate for all subsequent months, whereas PeopleStrategy made its May 2015 payment based on

the 1% interest rate—consistent with its position in this litigation. Rathblott claims that this

---

[5] The Court notes that, even if Rathblott's interpretation were correct, the default-interest provision would be "unenforceable on grounds of public policy as a penalty." *Leaman v. Wolfe*, No. 14-cv-3511, 2015 WL 5813339, at *2 (3d Cir. Oct. 6, 2015) (quoting *Pantuso Motors, Inc. v. Corestates Bank, N.A.*, 798 A.2d 1277, 1282 (Pa. 2002)). As the United States Court of Appeals for the Third Circuit held, "a $100,000 charge in the event of an untimely payment is extravagant and disproportionate to any reasonable estimate of damages accrued using the applicable interest rate." *Id.* In this case, plaintiff seeks thousands of dollars for a one-day lapse. The damages sought are manifestly disproportionate to Rathblott's actual loss, or any reasonable *ex ante* approximation of a one-day loss. *See id.* Accordingly, the default-interest provision, as applied to the facts of this case, would qualify as an unenforceable penalty even if the Cure Period had no effect on the imposition of default interest.

11

constitutes an actionable breach of the Promissory Note because PeopleStrategy did not cover the alleged shortfall within 30 days.

As PeopleStrategy correctly argues, Rathblott's claim based on the Promissory Note is dependent upon the application of 6% default interest as claimed in Count I. In addressing Count I, the Court concluded that the Cure Period in the Settlement Agreement relieved PeopleStrategy of the obligation to pay interest at the 6% rate as of April 2015. PeopleStrategy did not under-pay in May 2015 and subsequent months, and thus did not breach the Promissory Note. *See supra* note 4. For that reason Count II fails to state a claim upon which relief can be granted.

## V.    CONCLUSION

The Settlement Agreement unambiguously provides that utilizing the Cure Period reverts the parties to their pre-default conditions, and prevents application of the default-interest rate. As a matter of law, both Counts of plaintiff's Amended Complaint fail to state claims on which relief can be granted. Accordingly, the Court grants PeopleStrategy's Motion to Dismiss and dismisses the Amended Complaint with prejudice.

An appropriate order follows.